GULOTTA, Judge.
In June, 1981, the Louisiana State Athletic Commission, through its chairman, Lindsey J. Williams, orally granted Super City Boxing Productions, Inc., a Louisiana licensed fight promoter, “tentative permission” to reserve September 16, 1981 for a live boxing championship fight. Super City had intended to promote a fight on that date between Sean O’Grady and Claude Noel.
Precipitated by Super City’s complaint that Pace Management Corporation and the New Orleans Boxing Club were interfering with its promotion of the fight by advertising the sale of a closed circuit television championship fight between Sugar Ray Leonard and Tommy Hearns on the same date, the Commission conducted hearings on August 31 and September 2 and 4. At the conclusion of these hearings the Commission denied “. . . Super City any further rights to September 16 on which to promote a professional boxing match.”
Upon Super City’s petition for injunctive relief, the trial judge stayed the Commission’s order.[1] The September 15,1981 judgment of the trial court further enjoined Pace and the New Orleans Boxing Club from televising or showing the Leon *1100 ard/Hearns closed circuit telecast scheduled for September 16.
In written reasons, the trial judge concluded that the Commission, had “... acted arbitrarily, capriciously and abused its discretion ..., when it revoked the right of Super City Boxing Productions to promote a boxing event on September 16, 1981.” In those reasons, he stated:
“R.S. 4:66A provides that a club licensed to hold, conduct or give professional boxing contests is not required to furnish signed contracts to the Commission until six days before the contest in the case of main events. Accordingly, this Court finds that based upon the record that the State Athletic Commission abused its discretion in revoking the right of Super City Boxing to promote a boxing event on September 16, 1981, and prior to September 10, 1981, the last date that Super City had to comply with the requirement that signed contracts be submitted to the Commission six days prior to the contest. Once a date is tendered to a boxing club to promote an event, this date becomes a property right of that club and cannot be revoked except for cause. The mere fact that a club has not submitted signed contracts to the Commission in advance of the six day statutory period does not give the Commission the right to revoke the tendered date and strip the agreed club of its property right to that date.”
Pace, appealing, claims the Commission was within its authority to deny plaintiff’s permit for the September 16 date because of Super City’s failure to arrange for an arena and a fight on that date. Pace further contends that Super City has failed to show irreparable injury and is not entitled to injunctive relief. Finally, Pace argues that a club or theatre sponsoring a televised or other broadcast fight from outside the state needs only to be licensed and no permit from the Commission is required.
The Louisiana State Athletic Commission and the Louisiana State Exposition District, also appealing, claim Super City had no cause or right of action under the Louisiana Administrative Procedure Act, LSA-R.S. 49:951, et seq., for judicial review of the Commission’s action on September 4. In this connection, defendants point out that since Super City had only received a “tentative date” for a proposed boxing contest and had no “permit” from the Commission to promote a specific match, it had no legitimate claim of entitlement or property interest sufficient to trigger an adjudicatory hearing or reviewable order. These defendants claim the trial judge erred in concluding plaintiff had acquired an exclusive property right and in finding the actions of the Commission arbitrary, capricious and an abuse of discretion.
We do not agree. Accordingly, we affirm the judgment of the trial court.
At the outset, we reject the Commission’s argument that plaintiff had no right or cause of action for judicial review. We conclude, as did the trial judge, that the Commission’s oral granting of a “tentative date” of September 16 created a property interest in Super City. Upon obtaining this tentative date, Super City, pursuant to LSA-R.S. 4:66(A), had the right until six days before the fight to submit contracts in order to receive a permit.[2] To allow the Commission to revoke its tentative permission unilaterally before the lapse of this statutory time period because of plaintiff’s failure to furnish contracts would render the six day requirement meaningless.
Accordingly, we hold that the Commission’s September 4 denial of Super City’s right to promote a boxing contest was an *1101 “adjudication” or an “agency process for the formulation of a decision or order”, within the meaning of LSA-R.S. 49:951(1), affecting a property right of Super City. Plaintiff was therefore entitled to seek judicial relief from the Commission’s order in the district court pursuant to the Louisiana Administrative Procedure Act, LSA-R.S. 49:951, et seq.
Having so concluded, we now turn to the merits of the trial judge’s decision.
It is undisputed that in June, 1981 the Commission orally granted tentative permission to Super City to reserve September 16 for a live boxing match. The record is clear also that on June 26, 1981, a representative of Super City was notified by Mike Levy, Vice-President of Hyatt Management Corporation, that the Superdome would be available on September 16,1981 to whoever was promoting the Leonard/Hearns championship fight. A tender of a deposit by Super City to Levy on June 26 for use of the Superdome on September 16 was refused.
According to Levy, although he had no assurance on June 26 that the Leonard/Hearns fight would take place on September 16, it was “business judgment” that this fight would be more lucrative for the Superdome than an unnamed championship fight to be sponsored by Super City. After receiving an August 4, 1981 mailgram advising that the closed circuit telecast of the Leonard/Hearns fight would take place on September 16, 1981, Levy leased the Super-dome to Pace Management Corporation for that date.
Although Pace Management Corp. was granted the lease, the telecast was being promoted under the license of Lou Messina and the New Orleans Boxing Club. However, according to Lindsey J. Williams, chairman of the Louisiana State Athletic Commission, it was not until August 13 that Messina made an application for the September 16 date. Messina testified that he applied to the Commission for that date around August 24. Mike Cusimano, secretary-treasurer of the Commission, stated that on August 31 he had refused to accept documentation as proof of Messina’s status as promoter of the Leonard/Hearns fight.
Despite the lack of a permit by the Commission to Messina and the New Orleans Boxing Club up to and including September 4, and notwithstanding the prohibition in LSA-R.S. 4:66 that no licensed promoter may publicly announce or advertise that any bout will take place unless formally approved by the Commission, it is clear that earlier advertisements, publications and notices of the Leonard/Hearns fight had been made. Furthermore, although the lease was entered into between Hyatt Management Corporation and Pace Management for the Superdome on August 4, 1981, Mike Levy had made a decision on July 14 that he would not allow Super City use of the Superdome for its promotion on September 16.
The reasoning of the Commission in revoking Super City’s tentative permission for the September 16 date was that no plans or arrangements had been submitted to the Commission in furtherance of the September 16 promotion by Super City. According to Lindsey Williams, Super City “never presented” to the Commission “a match or an arena to stage the fight in.”
Cusimano stated that a promoter “cannot sit on a tentative date”. He corroborated Williams’ testimony that nothing had been heard from Super City regarding confirmation of arrangements and contracts for a September 16 live fight. When confronted with LSA-R.S. 4:66(A), which provides that a promoter shall furnish signed contracts to the Commission six days before the contest, Cusimano stated that this is not a hard and fast rule as applied by the Commission. He explained that after oral tentative permission is granted, according to the custom and practice of the Commission, it stands to reason that a promoter must do something in furtherance of the match. Arrangements for an arena must be made, information exchanged between the promoter, fighters, the stadium, and the. Commission in furtherance and confirmation of the fight. He stated that Super City had not come in with any documentation up until *1102 the September 4 hearing and Super City’s failure was the basis for the revocation.
Despite the well-reasoned logic reflected in Cusimano’s testimony, the statute clearly allows a promoter to present signed contracts to the Commission no later than six days before the fight. The cause of the problem in this case may perhaps be a legislative one. In this respect the trial judge articulately stated:
“. .. In the event that the Commission feels that this six day statutory period does not give the Commission ample time prior to an event to insure that all arrangements have been made for a successful contest, then the remedy of the Commission is to seek a legislative change and require that a club submit the signed contracts as well as the lease for an arena at least thirty or forty-five days prior to the contest.”
Furthermore, we add that it was incumbent on the Commission to notify the promoter, who had been given oral, tentative permission, of the possibility of conflicting promotions on the same date, especially where the Commission had not been informed of any action on the part of the promoter in furtherance of the tentative contest and was aware of another group’s interest in a different promotion on the same date. This is particularly true when LSA-R.S. 4:66(B) provides that the Commission shall not grant a permit to more than one club in the same parish for the same date. Accordingly, we cannot conclude that the trial judge erred in reinstating Super City’s right to promote and hold a boxing contest in Orleans Parish on September 16, 1981.
Nor do we find any error in the trial judge’s conclusion that Super City was entitled to injunctive relief. The testimony of Anthony P. Marullo was that failure of Super City to obtain the September 16 date could result in the loss of its license to promote boxing, as well as loss of contacts and money. His testimony was corroborated by Eddie Sapir and to some extent by Lindsey Williams. Under these circumstances, injunctive relief was warranted.
Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.

. Two other orders not pertinent to the issues on appeal were also issued by the Commission on September 4 on Super City’s complaint.

. LSA-R.S. 4:66(A) provides as follows:
“66. Professional boxing contracts; permits A. Each club licensed to hold, conduct or give professional boxing contests or exhibitions shall furnish signed contracts to the commission as follows: (1) in the case of main event boxers, six days before the contest or exhibition; and (2) in the case of preliminary boxers, four days before the contest or exhibition. No such licensed promoting club, matchmaker, manager, boxer, or wrestler, may publicly announce or advertise that any bout or exhibition will take place unless such bout or exhibition has been formally approved by the commission.”